753 So.2d 596 (2000)
Susan SMITH, as Personal Representative of the Estate of David Smith, deceased; and Susan and James Smith, individually, Appellants,
v.
HOOLIGAN'S PUB & OYSTER BAR, LTD., and Jay Love, Appellees.
No. 3D98-1479.
District Court of Appeal of Florida, Third District.
February 16, 2000.
*598 Holland & Knight and Daniel S. Pearson, and Ilene L. Pabian, Miami, for appellants.
Marlow, Connell, Valerius, Abrams, Adler & Newman and William G. Edwards, Miami, for appellees.
Before GREEN and SORONDO, JJ., and NESBITT, Senior Judge.

ON MOTION FOR REHEARING GRANTED
PER CURIAM.
We grant Appellees' Motion for Rehearing, withdraw our previous opinion, and substitute the following in its place.
Susan and James Smith (the Smiths), parents of the deceased David Smith (David), appeal from a final judgment entered in accordance with a jury verdict. We reverse and remand for a new trial.
Twenty-two year old David Smith was shot and killed by Josef Riano (Riano) outside Hooligan's Pub and Oyster Bar (Hooligan's), after the two had an altercation inside the bar and were thrown out. Riano pleaded no contest to the charge of second degree murder. He was sentenced to seven years in prison.
The Smiths brought a wrongful death action against Hooligan's and its owner, alleging that David's death was caused by their negligent failure to provide adequate security. Hooligan's asserted that David was comparatively negligent in causing his own death and that a third party, not Hooligan's, was liable.
Before trial, the Smiths moved in limine to exclude as irrelevant and immaterial all evidence regarding David's character. They also moved in limine to exclude the proposed opinion testimony of Hooligan's security expert regarding David's alleged propensity for violence. Both motions were denied at a pretrial hearing.
The jury found Hooligan's liable and awarded the Smiths damages in the amount of $500,000. It found that David was 60% responsible for his own death, and the award was reduced accordingly. On appeal, the Smiths raise two points: 1) that because principles of comparative fault are not applicable to negligence actions bottomed on an intentional tort, the trial court wrongly reduced the $500,000 verdict for the Smiths by the comparative negligence the jury attributed to David; and 2) that the trial court improperly admitted evidence concerning David's purported bad character because the use of bad character evidence to prove how a person acted on a particular occasion is impermissible in civil proceedings.
First, addressing the comparative fault apportionment issue, we find that this argument was not preserved for appellate review by way of a motion for directed verdict or a motion for judgment notwithstanding the verdict. The Smiths contend that they did, in fact, move for directed verdict on liability at the close of the evidence. This is true. However, the record reflects that the Smiths' attorney argued as follows:
[PLAINTIFFS' COUNSEL]: Yes. We would move for a directed verdict on liability in our case, Your Honor, basically, contending that Hooligan's, despite their duty to provide security, provided absolutely no security in the parking lot and, therefore, they breached their duty to provide security and, as a result, David Smith was killed.
THE COURT: Motion denied....
We do not agree with the Smiths' assertion that this motion for directed verdict encompassed their position that they were entitled to judgment in their favor undiminished by any comparative fault finding. On the contrary, the record reflects that the motion the Smiths made did not encompass the comparative fault issue; no *599 argument was made that David's alleged comparative negligence was not a proper defense to Riano's intentional conduct or that comparative negligence did not apply to the facts of this case. In fact, this argument was first presented by the Smiths on appeal. Generally, one who submits his cause to the trier of fact without first moving for directed verdict at the end of all evidence has waived the right to make that motion. See Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88 (Fla.1985). Thus, this motion for directed verdict below was insufficient to preserve the comparative fault issue for appellate review.
Turning to the Smiths' second point on appeal, the Smiths contend that the trial court in this civil action wrongly allowed Hooligan's to offer evidence regarding David's purported bad character as circumstantial evidence of his conduct on the night of his death. We agree with the Smiths for a number of reasons and believe this error requires reversal.
First, as the Smiths correctly contend, section 90.404(1), Florida Statutes (1997), provides that "[e]vidence of a person's character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion," except in three circumstances:
(a) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the trait
(b) Character of victim.
1. Except as provided in s. 794.022, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution in a homicide case to rebut the trait; or
2. Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the aggressor.
(c) Character of witness. Evidence of the character of witness, as provided in s. 90.608-90.610.
As stated by Professor Ehrhardt:
In civil actions, character evidence is inadmissible to prove that a person acted in conformity with his or her character, i.e., to prove the person's conduct. The probative value of such evidence is outweighed by its prejudicial effect.
CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 404.3 at 154 (1999 ed.). Furthermore, section 90.404, Florida Statutes (1997), only recognizes the exceptions delineated in subsections (1)(a) and (b) in criminal cases. The use of the words "accused" and "prosecution" in subsections (1)(a) and (b) makes it clear that section 90.404 limits the applicability of those exceptions to criminal cases.[1] Thus, because this is a civil action, the character evidence was inadmissible. See Laffman v. Sherrod, 565 So.2d 760 (Fla. 3d DCA 1990); Pino v. Koelber, 389 So.2d 1191 (Fla. 2d DCA 1980).
In response to the Smiths' argument regarding the character evidence, Hooligan's counters that the character evidence was fair and appropriate rebuttal to the Smiths' evidence of David's good nature, which was offered by the Smiths to prove the measure of their loss. We disagree. The record reflects that the Smiths did not submit their evidence about David's good nature until after the trial court denied the Smiths' pretrial motion in limine to exclude as irrelevant all evidence Hooligan's proposed to use regarding David's bad character; until after Hooligan's counsel had portrayed David during opening statements as a violent person who had numerous run-ins with the law; and until after the Smiths' counsel made clear that in presenting testimony concerning David's good character, he would be relying solely on the trial court's ruling permitting the admission of character evidence, *600 and that he did not want to be accused of opening the door to the introduction of such evidence. Thus, the Smiths' counsel presented good character testimony in anticipation of Hooligan's bad character evidence and simply attempted to minimize the latter's prejudicial impact.
Next, the Smiths argue that evidence of David's involvement in other crimes and acts was inadmissible as "similar fact evidence" pursuant to section 90.402(2)(a). Hooligan's responds that the evidence concerning David's propensity toward violence was admissible, as it was relevant to prove David's opportunity, intent, and plan to harm Riano, as provided by section 90.404(2)(a). We disagree with Hooligan's. Section 90.404(2)(a) states:
(2) OTHER CRIMES, WRONGS OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
The Florida Supreme Court has repeatedly stated that relevancy is the test for admitting character evidence regarding other crimes, wrongs, or acts:
Nonetheless, relevancy is the test. If found to be relevant for any purpose save that of showing bad character or propensity, then it should be admitted.
Williams v. State, 110 So.2d 654, 662 (Fla. 1959); see also Williams v. State, 662 So.2d 419, 420 (Fla. 3d DCA 1995).
The evidence regarding David's unrelated bad acts was not relevant or essential to prove a material fact. It served solely to demonstrate David's bad character and propensity for violence, which, under section 90.404(2)(a), is not permissible.
"When a person's character is an essential element in the case, evidence of his character is always admissible because it is in issue." Pino, 389 So.2d at 1193. However, "evidence of a person's character which is offered only as tending to prove the probability that he or she acted in a manner consistent with that character on a particular occasion is generally inadmissible." Id. In Pino, the Second District Court of Appeal stated that the basis for this rule is that "when character is introduced only as circumstantial evidence of conduct, there is too much danger of surprise, prejudice, and distraction from the issues." Id.
Hooligan's presented evidence concerning David's purported propensity for violence and his alleged involvement in several unrelated crimes. Hooligan's security expert characterized David as being threatening and usually the aggressor in any fight he was involved in. It is clear that this character evidence was irrelevant to the case at bar. Allowing this improper character evidence at trial was unfairly prejudicial.
Finally, the Smiths contend that Hooligan's expert's opinion that David was the aggressor based on character evidence was inadmissible as invading the province of the jury. We agree. Hooligan's expert was allowed to say that David was the aggressor in the fight that later led to his murder. This opinion, based on a review of eyewitness accounts and depositions, invaded the province of the jury.
According to section 90.702, Florida Statutes (1997), the purpose of expert testimony is to "assist the trier of fact in understanding the evidence or in determining a fact in issue." The expert's opinion must concern a subject which is "beyond the common understanding of the average layman and is such as will probably aid the triers of fact in their search for truth." La Villarena, Inc. v. Acosta, 597 So.3d 336, 339 (Fla. 3d DCA 1992).
We agree with the Smiths that the matter of who was the aggressor in a fight is one within the ordinary understanding of the jury. See Republic Nat'l Life Ins. Co. *601 v. Valdes, 348 So.2d 566, 569 (Fla. 3d DCA 1977)(jury resolves conflicting evidence as to whether insured fatally shot in altercation was "aggressor" within terms of insurance policy exclusion); Forshee v. Peninsular Life Ins. Co., 370 So.2d 842, 845 (Fla. 3d DCA 1979)(in civil action to recover accidental death benefits, "[t]he question of whether a death is accidental or whether the decedent was the aggressor or committing an assault at the time of his death is, by its very nature a question of fact [for the jury]"); Jenkins v. State, 349 So.2d 1191, 1192 (Fla. 4th DCA 1977)(resolution of conflicting testimony concerning identity of aggressor in fight was question for jury). Thus, we find it was error to allow Hooligan's expert to testify in this manner.
Hooligan's concedes in its Answer Brief that its security expert's testimony concerning David's alleged prior involvement in several criminal acts was improper. However, it posits that the error was harmless because the same information was presented through earlier witnesses at trial. We do not believe that the fact that this inadmissible character evidence had already been introduced, over several overruled objections, rendered the expert's later testimony harmless. The expert further added to the error by describing in detail the criminal acts in question and that the admission of this evidence through Hooligan's expert "unfairly prejudiced the plaintiffs and misled the jury by giving the inadmissible evidence the expert's imprimatur of approval and reliability." Maklakiewicz v. Berton, 652 So.2d 1208, 1209 (Fla. 3d DCA 1995).
For all the foregoing reasons, we conclude that the bad character evidence regarding David was improperly admitted by the trial court. Accordingly, we reverse the trial court's final judgment and remand this case for a new trial on the issue of apportionment of damages, the relief sought by appellants.
NOTES
[1] Ehrhardt states, "Section 90.404 and Federal Rule 404 only recognize the exceptions in criminal cases; an exception should not be read into the statute when the statute clearly provides to the contrary." EHRHARDT, FLORIDA EVIDENCE § 404.3, at 156.