785 So.2d 578 (2001)
MIDTOWN ENTERPRISES, INC., Appellant,
v.
LOCAL CONTRACTORS, INC., et al., Appellees.
No. 3D00-2151.
District Court of Appeal of Florida, Third District.
April 11, 2001.
Rehearing Denied June 8, 2001.
*579 Elder, Kurzman & Vaccarella, and David Elder, Miami, for appellant.
Hollander & Bartelstone, and Howard Hollander, Miami, for appellees.
Before LEVY, SHEVIN, and RAMIREZ, JJ.
*580 RAMIREZ, J.
Midtown Enterprises, Inc., plaintiff below, appeals an order of the trial court overturning a jury verdict and granting a new trial. Because the trial court was initially correct in its evidentiary rulings, we reverse the order with instructions that the jury verdict be reinstated.
As a certified minority business enterprise, Midtown obtained an electrical subcontract with Local Contractors, Inc., a general contractor. Midtown subsequently sued Local Contractors alleging breach of contract.
Prior to trial, the court granted Midtown's motion in limine excluding any evidence of Midtown's status as a minorityowned business. Local Contractors had sought to introduce such evidence in order to establish a "pattern of cheating" by Midtown.
At trial, the parties presented conflicting evidence concerning the value of the work done by Midtown, whether Midtown installed "dummy" wiring to make it look like more work had actually been completed at the project, and whether Midtown's work received city approval. Local Contractors also offered evidence regarding the cost to correct and finish the work after Midtown withdrew.
As rebuttal, Midtown submitted the testimony of its foreman, Jimmy Gonzalez, who had done the wiring. Although Gonzalez was not listed on the pretrial witness list, and Local Contractors had not taken his deposition, the trial court allowed him to testify. Gonzalez stated that there had been no "dummy" wiring. After the jury awarded Midtown $30,000, Local Contractors filed a motion for a new trial, citing three evidentiary errors by the trial court and arguing that the verdict was against the manifest weight of the evidence. The trial court granted the motion for a new trial on the basis of both the manifest weight of the evidence and its evidentiary rulings.

I. EVIDENTIARY RULINGS
A trial court's error in the acceptance or rejection of evidence does not necessarily constitute harmful error. Only "when a substantial right of the party is adversely affected" may a court grant a new trial. See § 90.104(1), Fla. Stat. (1999); Parsons v. Motor Homes of America, Inc., 465 So.2d 1285, 1290 (Fla. 1st DCA 1985). When a trial court is asked to grant a new trial on the basis of evidentiary errors, the judge in essence sits as an appellate judge and can only reverse itself if the error was substantially prejudicial. As Judge Grimes wrote, if the trial court "concludes that reversible error has been committed, the judge is obliged to grant a new trial on the same basis that an appellate court would do so." Ford v. Robinson, 403 So.2d 1379, 1382 (Fla. 4th DCA 1981). In those situations, the appellate court is on an "equal footing" with the trial court in reviewing such errors. Id.
The first evidentiary ruling cited by the trial court as cause for granting a new trial was the exclusion of evidence of Midtown's qualification as a minorityowned business enterprise. Local Contractors argues that Midtown used a figurehead to obtain its qualification, then fired that employee, which led to Midtown's decertification as a minority business enterprise, and that this conduct demonstrates a "pattern of cheating." The issues as framed by the pleadings all relate to breach of contract and the claim of lien. How Midtown obtained the contract had nothing to do with how it performed under the contract. Local Contractors, however, argues that if Midtown would cheat in the manner in which it *581 obtained the contract, it was more likely to cheat in its performance.
Section 90.404(1), Florida Statutes (1999), states that "[e]vidence of a person's character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion." Propensity for cheating would clearly be inadmissible. Character evidence is only admissible if the party places its character in evidence, and even then, it is only admissible by way of reputation evidence. See § 90.609, Fla. Stat. (1999). Likewise, it is inadmissible under section 90.404(2)(a), Florida Statutes (1999), which states:
(2) OTHER CRIMES, WRONGS OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Local Contractors has not suggested any permissible purpose for the admission of such evidence. See Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So.2d 596, 600 (Fla. 3d DCA 2000) (holding that evidence regarding bad acts was not relevant or essential to prove a material fact and served only to demonstrate bad character and propensity). Clearly, the probative value of this evidence was outweighed by its prejudicial effect. See § 90.403, Fla. Stat. (1999). The trial court was thus correct when it initially granted the motion in limine.
The second evidentiary ruling cited by the trial court as error allowed Gonzalez to testify even though he was not listed as a witness in pretrial discovery. The trial court correctly permitted the testimony because it was the defense that unfairly surprised Midtown with allegations of "dummy" wiring, accusations which were never mentioned in the pleadings or during discovery. In fact, Local Contractors was specifically asked by interrogatory to identify with specificity Midtown's deficiencies in performance, and its reply made no mention of "dummy" wiring. Gonzalez was properly allowed to testify in rebuttal with respect to solely this issue.
The third evidentiary ruling cited by the trial court as error permitted Midtown to present to the jury the substance of a City of Miami document that was not admitted into evidence. Local Contractors' expert, a professional engineer, had testified that Midtown never received city approval for any rough-in electrical work and that Midtown "front-loaded" the job by trying to collect more money than the work in place justified. Midtown sought to introduce a City of Miami document that allegedly reflected an approval of Midtown's rough-in electrical installation. In attempting to lay a predicate for the admission of the document, counsel for Midtown asked:
Q. And does that particular permit inspection record reflect whether or not any rough electrical inspection passed during the course of Midtown's time on the job?
A. Yes, among a lot of other inspections.
At this point, there was no objection. The only objection raised by Local Contractors was to the admission of the document, which was excluded, because the document was unreadable. Thus, contrary to the representations made to the trial court at the hearing on the motion for a new trial, the document was not published to the jury over the objection of Local Contractors. The error, if any, was not preserved and the trial court improperly based its *582 order granting a new trial on this ground. See § 90.104(1)(a), Fla. Stat. (1999).

II. MANIFEST WEIGHT OF THE EVIDENCE
In Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999), the Florida Supreme Court held that a trial judge has broad discretion in ruling on a motion for a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence. "When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order ." Id. The reasons articulated here were as follows:
The Court found the Defendant's evidence to be overwhelming, not only in its quantity, but in its quality as well. Contributing to the overwhelming nature of the evidence was the testimony of the project architect, Rey Martinez and completion electrical subcontractor, Calvin Samuels (Tropic Electric, Inc.), both of whom were disinterested and independent witnesses who testified that Plaintiffs work was faulty and required Defendant to spend additional sums to correct the incomplete non-conforming work. Based on the Court's knowledge and experience, the jury must have been deceived as to the force and credibility of the evidence. It is therefore the duty of this Court to require that the search for truth not lead to a miscarriage of justice.
While the Brown decision reiterates long-standing precedent that the trial court has broad discretion in granting a new trial when the verdict is against the manifest weight of the evidence, the supreme court also reminds us that "[t]he role of the trial judge is not to substitute his or her own verdict for that of the jury, but to avoid what, in the judge's trained and experienced judgment, is an unjust verdict." Id. at 495. The supreme court also quotes from Smith v. Brown, 525 So.2d 868, 870 (Fla.1988), in which it stated:
Clearly, it is a jury function to evaluate the credibility of any given witness. Moreover, the trial judge should refrain from acting as an additional juror. Nevertheless, the trial judge can and should grant a new trial if the manifest weight of the evidence is contrary to the verdict. In making this decision, the trial judge must necessarily consider the credibility of the witnesses along with the weight of all of the other evidence. (citations omitted).
Brown, 749 So.2d at 497. The mere fact that the trial court evaluates the credibility of witnesses does not necessarily infringe on the function of the jury. "If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion." Id. at 498.
In this case, the reasons articulated by the trial court in the order refer solely to the weight of the evidence and the credibility of the witnesses. More importantly, the oral pronouncements made by the trial court at the conclusion of extensive post-trial hearings only refer to the perceived evidentiary errors. It is only the order drafted by counsel for Local Contractors that articulates the reasons quoted above. In fact, during these hearings, the trial court expressed its reluctance to act as a seventh juror.[1] We thus find that the trial *583 court abused its discretion in granting a new trial on the basis that the verdict was against the manifest weight of the evidence.
Local Contractors also argues that, in the general verdict, the $30,000 awarded by the jury represents Midtown's alleged balance of $42,000 less $12,000 for delay damages suffered by Local Contractors, and therefore, the jury, did not award Local Contractors anything for correction and completion work. Without an itemized verdict, however, this is only conjecture. See Johnson v. LaSalle, 774 So.2d 760, 761 (Fla. 4th DCA 2000).
For the foregoing reasons, we reverse and remand with instructions.
NOTES
[1] The trial court repeatedly expressed its disagreement with the verdict and its reluctance to interfere:

... The problem I have with your claim is, to be perfectly candid, if I were on the jury, the verdict probably would have been different, but I am not on the jury.
* * *
You know, I heard it all. I thought he was very, very credible. I had no problem with it. But isn't that the province of the jury?
* * *
... Obviously as you all have figured out by this time, the jury and I came to different conclusions as far as the evidence was concerned.